| | |
|---|---|
| Leslie A. Berkoff | Jerry Montag |
| MORITT HOCK & HAMROFF LLP | SEYFARTH SHAW LLP |
| 400 Garden City Plaza | 620 8th Avenue |
| Garden City, New York 11530 | New York, NY 10018 |
| Telephone: (516) 880-7243 | Telephone: (212) 218-4646 |
| Facsimile: (516) 873-2010 | Facsimile: (917) 344-1339 |
| Email: lberkoff@moritthock.com | Email: jmontag@seyfarth.com |
| | |
| *Attorneys for Maguire Ft. Hamilton LLC* | M. Ryan Pinkston (*pro hac vice*) |
| | SEYFARTH SHAW LLP |
| | 560 Mission Street, Suite 3100 |
| | San Francisco, California 94105 |
| | Telephone: (415) 544-1013 |
| | Facsimile: (415) 397-8549 |
| | Email: rpinkston@seyfarth.com |
| | |
| | *Attorneys for 4202 Fort Hamilton Debt LLC* |

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 4218 PARTNERS LLC, | Case No. 19-44444 (NHL) |
| Debtor. | |
| In re: | Chapter 11 |
| 4202 PARTNERS LLC, | Case No. 20-42438 (NHL) |
| Debtor. | |

**MAGUIRE FT. HAMILTON LLC'S AND 4202 FORT HAMILTON DEBT LLC'S JOINT REPLY IN SUPPORT OF ENTRY OF PROPOSED ORDERS CONFIRMING FOURTH AMENDED PLANS OF LIQUIDATION FOR DEBTORS 4218 PARTNERS LLC AND 4202 PARTNERS LLC**

Maguire Ft. Hamilton LLC ("Maguire") and 4202 Fort Hamilton Debt LLC ("Fort Hamilton Debt"), through their respective undersigned counsel, hereby file this joint reply: (1) in support of the Court's entry of Maguire's proposed Order Confirming Fourth Amended Plan of Liquidation Filed by Maguire Ft. Hamilton LLC for Debtor 4218 Partners LLC and Fort Hamilton Debt's proposed Order Confirming 4202 Fort Hamilton Debt LLC's Fourth Amended Chapter 11 Plan of

Liquidation for Debtor 4202 Partners LLC (together, the "Proposed Orders"); and (2) in opposition to the letter, dated February 8, 2022 (Case No. 19-44444, Dkt. No. 227) (the "Letter"), filed by 4218 Partners LLC (the "4218 Debtor") and the Objection to Maguire Ft. Hamilton LLC's Proposed Confirmation Order of Amended Chapter 11 Plan of Liquidation for Debtor 4202 [sic] Partners LLC (Case No. 19-44444, Dkt. No. 228) and Objection to 4202 Fort Hamilton Debt LLC's Proposed Confirmation Order of Amended Chapter 11 Plan of Liquidation for Debtor 4202 Partners LLC (Case No. 20-42438, Dkt. No. 141) (together, the "Objections") filed by Samuel "Shabsi" Pfeiffer ("Pfeiffer").  For the reasons that follow, the Court should overrule the arguments of the 4218 Debtor and Pfeiffer and enter the Proposed Orders as submitted by Maguire and Fort Hamilton Debt.

1.  Despite Maguire and Fort Hamilton Debt having filed their original plans of liquidation (Case No. 19-44444, Dkt. No. 153; Case No. 20-42438, Dkt. No. 75) on February 5 and February 6, 2021, over a year ago, and their respective fourth amended plans (Case No. 19-44444, Dkt. No. 208; Case No. 20-42438, Dkt. No. 118) (together, the "Lender's Plans") on October 26, 2021, over three months ago, it appears that only now—*after this Court has already determined both Lender's Plans will be confirmed*—have the 4218 Debtor and Pfeiffer bothered to read the bidding procedures set forth therein.

2.  Apparently, the 4218 Debtor and Pfeiffer had the mistaken impression that the Court would not confirm the Lender's Plans and the bidding procedures detailed at length therein. Grasping for some way to obtain leverage and control for themselves over the bidding and auction processes, the 4218 Debtor and Pfeiffer seek to rewrite the already-approved bidding procedures on the back end.  Their purported objections and requests for revisions come far too late.  The bidding procedures have been on file with the Court for many months, and the parties have appeared

2

frequently before the Court to discuss the Lender's Plans, the related disclosure statements, the retention of a broker, the sale of the subject parcels, and many other issues.

3. Additionally, Maguire and Fort Hamilton Debt's *fourth* amended plans reflect changes and compromises resulting from numerous prior hearings. Substantive changes at this late date unquestionably will impact the desire and ability of Maguire and Fort Hamilton Debt to proceed with consummation of the Lender's Plans in light of the significant compromises already made by the secured creditors.

4. Maguire and Fort Hamilton Debt provided notice of the bidding procedures to all creditors and parties in interest months ago in advance of plan confirmation, and the notice requirements for plan confirmation exist for important and obvious reasons. The 4218 Debtor and Pfeiffer cast aside those requirements and want the Court to alter the bidding procedures outside the context of the noticed confirmation hearings *and without any indication that the 4218 Debtor and Pfeiffer have provided notice to all creditors and parties in interest*. But the point of Maguire's and Fort Hamilton Debt's preparation and submission of proposed orders is *not* to provide the 4218 Debtor and Pfeiffer another bite at the apple; they squandered their opportunity to be heard by failing to file a legitimate objection to the Lender's Plans by the Court's January 3, 2022 deadline. Rather, Maguire and Fort Hamilton Debt have submitted proposed orders to conform with the Court's rulings during the plan confirmation hearing—no more and no less. The Court should reject on this basis alone the 4218 Debtor and Pfeiffer's effort to restructure the bidding and auction process to serve their interests alone.

5. As for the substance of the 4218 Debtor's and Pfeiffer's belated objections, each requested modification should be rejected. Their objections are transparently designed to permit the 4218 Debtor and Pfeiffer opportunities to interfere with the bidding and auction process without any

3

material consequences *to them* and to insert changes that depart from typical and ordinary procedures utilized in plans and bankruptcy sales all the time.

6. As an overarching matter, given the history in these cases, Maguire and Fort Hamilton Debt harbor serious concern that the 4218 Debtor's and Pfeiffer's requested changes are the result of a hidden agenda. For example, the 4218 Debtor asks the Court to modify the requirement that each bidder establish that such bidder has unconditionally committed financing from a qualified source documented to Maguire's and Fort Hamilton Debt's satisfaction.[1] The 4218 Debtor's request that Maguire and Fort Hamilton need only be "reasonably" satisfied and that covenants and conditions be "reasonably" acceptable is merely an attempt to aid Pfeiffer in a future argument that any conditional financing he brings to the auction should have been accepted. Maguire and Fort Hamilton Debt have zero incentive to prevent qualified, properly financed bidders from participating in the bidding and auction process. What everyone can and should avoid are wasteful arguments over whether financing with strings attached is "reasonably" acceptable.

7. As another example, Pfeiffer asks that the Court commandeer completely Maguire's and Fort Hamilton Debt's roles and exercise of their business judgment in the bidding and auction processes. It is indisputable that bidding and auctions in bankruptcy proceed all the time without contemporaneous court oversight and decision-making. In fact, plan proponents' typical ability and authority to make decisions during the process is precisely why courts conduct hearings *after* the conclusion of the auction to consider approval of the sale. Pfeiffer's suggestion that this Court's role as an auctioneer strips Maguire and Fort Hamilton Debt of any and all decision-making power

---

[1] The 4218 Debtor strategically omits from the Letter its original request made to counsel that Maguire and Fort Hamilton Debt delete from the bidding procedures the requirement that a backup bidder's deposit shall be held in escrow even in the event of a credit bid. In other words, Pfeiffer and the 4218 Debtor wanted a bidder to be permitted to submit bids in the individual auctions without any accountability or consequences. They quite rightly predicted that the Court would reject such a frivolous request and, thus, dropped it from the from the formal submission to the Court.

along the way ignores not only the terms of the Lender's Plans properly before the Court, but also implies that an auctioneer in a bankruptcy sale automatically is imbued with authority to make substantive decisions during the bidding and auction process. That simply is not the case, and Pfeiffer notably cites no authority in support of his novel argument.

8. Frankly, if Pfeiffer harbors concerns about Maguire's and Fort Hamilton Debt's decisions throughout the bidding and auction process, then he had absolute every opportunity to direct the 4218 Debtor and 4202 Partners LLC to confirm a liquidation plan (and fund the auction process himself). Pfeiffer elected not to do so, presumably because he lacks the financial wherewithal to do so or because he is nonetheless content for Maguire and Fort Hamilton Debt to bear all the costs of plan confirmation and the sale process, so long as Pfeiffer can petition the Court, challenge every decision along the way, and thereby rig the auction in his own favor. That is now what the Lender's Plans provide, not how auctions are conducted, and not even remotely in line with this Court's rulings during the plan confirmation hearing. The Court should reject Pfeiffer's request to alter the bidding procedures to divest Maguire and Fort Hamilton Debt of their role and decision-making authority.

9. Pfeiffer also queries what shall come of sale proceeds in the event of a successful bid in the joint auction. The Lender's Plans already specify, in both Article III, Section 3 and also Article VI, Section 1 of such plans, the treatment of claims and the distribution of sale proceeds in the event of a joint sale. As such, no reason exists to make any modification.

10. Pfeiffer next takes issue with the provision, in subsection M of the bidding procedures, that a successful bidder that fails to consummate the approved transactions contemplated by its successful bid will forfeit its deposit to the plan proponent. Specifically, after Maguire and Fort Hamilton Debt have funded out of their own pocket all the expenses for

marketing, any due diligence requests, the bidding process, the auction process, the sale approval process, and the run-up to closing only to have a successful bidder renege on its bid, *Pfeiffer himself* should profit from the successful bidder's failure through a reduction in Maguire's and Fort Hamilton Debt's allowed claims (and a corresponding reduction in Pfeiffer's obligation as a personal guarantor). The deposit forfeiture is designed not only to incentivize bidders not to waste everyone's time by submitting non-serious bids, but also to permit Maguire and Fort Hamilton Debt to recoup some of their expenses in the event of such waste. Altering the deposit forfeiture provides absolutely no value whatsoever to the bankruptcy estates, and the estates and all parties involved are far better served if only serious, qualified bidders participate in the process. The Court should be clear about the motive behind Pfeiffer's request: He seeks the ability to submit bids without any meaningful commitment and without any negative consequences should his bid succeed and he nonetheless walks away.

11. Also, although the Court has *twice now* made clear its decision that the auction process will proceed with a joint auction followed by individual auctions *and no other rounds of bidding*, Pfeiffer yet again suggests that the Court has left the issue open. Not so. As Maguire and Fort Hamilton Debt explained to Pfeiffer's counsel, the Court made abundantly clear during the September 20, 2021 hearing that a joint auction would occur first, followed by an auction of the two parcels individually. (*See* Tr. 9/20/21 Hrg. (attached as **Exhibit A**), at 38:24-39:3 ("[I]f I'm going to cut off their right to joint credit bid, . . . I think it makes sense to sell the joint parcel first."), 41:13-17 ("[I]t makes the most sense and with some fairness to the fact that I'm not letting them credit bid on the joint, that we should sell . . . the project first without any credit bidding, that's as pure a sale as you get."); 43:5-6 ("I think the joint sale going first generates the fullest and truest bidds, so that is important to the lenders.").) During the plan confirmation hearing, Pfeiffer's

counsel again raised the issue, harkening back to his recollection from the September 20, 2021 hearing that the auction process would be book-ended by joint auctions, but the Court correctly recalled that no such exchange occurred. Rather, the Court reiterated as follows:

> First, the properties will be auctioned jointly, whereby Fort Hamilton will solicit bids for such joint sale of the 4202 property and 4218 property.
>
> Second, once the joint sale auction has concluded, each property will be auctioned individually, a single sale. At the conclusion of both the joint auction and the single sales, any credit bid will be compared with any bidder's allocation relating to the respective properties.

(*See* Tr. 1/13/22 Hrg. (attached as **Exhibit B**), at 69:18-70:1; *see also id.* at 72:4-7 ("And in fact, I said I wanted a joint sale first. And no one is going back anywhere. One joint sale, and then two individual sales.").) Pfeiffer's suggestion that the Court ever agreed to conduct a second joint auction after the initial joint and individual auctions is a complete fabrication.

12. Pfeiffer's insistence that a joint auction be conducted after the initial joint and individual auctions is nothing more than Pfeiffer's transparent attempt to rig the auction process in his favor. Conducting a second joint auction renders the initial joint auction completely superfluous, which is precisely Pfeiffer's goal. Contrary to Pfeiffer's suggestion, the suggested third round of bidding is transparently intended to chill bidding in the initial joint auction, force Maguire and Fort Hamilton Debt to guess at what amount they must credit bid in the individual auctions, and then hopefully permit Pfeiffer to submit a bare minimum bid in the second joint auction and effectively steal these parcels from the estates at an extreme discount. If Pfeiffer truly wants to "help the estate" and maximize recoveries in these cases, then he can and should show up with *bona fide*, non-contingent, competitive bids. Nothing about Pfeiffer's strategy to manipulate the outcome of the auction for his personal benefit is legitimate, and the Court should refuse even to entertain this latest reiteration of the exact same rejected argument.

13. Pfeiffer's last objection, that his counsel is obligated to insist that reference to Section 363 be scrubbed from this case because of a position taken by counsel in another case on behalf of a different client in different circumstances involving different legal issues, likewise fails. The notion that Pfeiffer must make a particular argument here because of a separate entity's argument in a different case has no support in the law. And, in any event, Pfeiffer's argument that Section 363 is unavailable here is simply incorrect. The 4218 Debtor and 4202 Partners LLC own the parcels in these bankruptcy cases and are selling such parcels; it just happens to be that they refused to do so without compulsion of the Court through confirmation of the Lender's Plans. In fact, that is why the Proposed Orders, as in other cases involving creditor plans, include a provision that the two debtors are directed and authorized to execute any necessary documents to consummate the sale. Thus, Pfeiffer's argument that the Lender's Plans cannot invoke Section 363 is incorrect. Furthermore, any party in interest may propose a plan, *see* 11 U.S.C. § 1121(c), a plan "may . . . provide for the sale of all or substantially all of the property of the estate," *id.* at § 1123(b)(4), and Section 363 applies in cases under chapter 11, *see id.* at § 103(a). In turn, "the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor," *id* at § 1141(c), a result broader than a sale "free and clear" pursuant to Section 363(b) in any event. *See Ditech Holding Corp.*, 606 B.R. 544, 581 (Bankr. S.D.N.Y. 2019).

14. Accordingly, the Court should overrule the 4218 Debtor's and Pfeiffer's objections on the grounds that such objections are untimely and also lack substantive merit. The Court should enter the Proposed Orders as submitted and permit the sale process in these cases finally to commence.

Dated: February 15, 2022  Miami, Florida

MORITT HOCK & HAMROFF LLP

By: */s/ Leslie A. Berkoff*
    Leslie A. Berkoff
    MORITT HOCK & HAMROFF LLP
    400 Garden City Plaza
    Garden City, New York 11530
    Telephone: (516) 880-7243
    Facsimile: (516) 873-2010
    Email: lberkoff@moritthock.com

*Attorneys for Maguire Ft. Hamilton LLC*

Dated: February 15, 2022  San Francisco, California

SEYFARTH SHAW LLP

By: */s/ M. Ryan Pinkston*
    M. Ryan Pinkston (*pro hac vice*)
    SEYFARTH SHAW LLP
    560 Mission Street, Suite 3100
    San Francisco, California 94105
    Telephone: (415) 544-1013
    Facsimile: (415) 397-8549
    Email: rpinkston@seyfarth.com

    Jerry A. Montag
    SEYFARTH SHAW LLP
    620 8th Avenue
    New York, NY 10018
    Telephone: (212) 218-4646
    Facsimile: (917) 344-1339
    Email: jmontag@seyfarth.com

*Attorneys for 4202 Fort Hamilton Debt LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2022, a true and correct copy of the foregoing **Maguire Ft. Hamilton LLC's and 4202 Fort Hamilton Debt LLC's Joint Reply in Support of Etnry of Proposed Orders Confirming Fourth Amended Plans of Liquidation for Debtors 4218 Partners LLC and 4202 Partners LLC** was caused to be served via the Court's CM/ECF system on all parties registered to receive electronic notice in this case.

                                                   /s/ *M. Ryan Pinkston*
                                                   M. Ryan Pinkston

79749797v.1